IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-41180
_____

JAMES JOSEPH WILKENS, JR.,

Petitioner-Appellant,

versus

GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT
OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

January 4, 2001

Before JOLLY, WIENER, and DENNIS, Circuit Judges.

WIENER, Circuit Judge.

"Rule 4(a)(1) of the Federal Rules of Appellate Procedure
provides that a party who wants to appeal a judgment or order
entered in a civil case must file a notice of appeal with the clerk
of the district court within 30 days after the date of entry of the
judgment or order from which the appeal will be taken.  Rules
4(a)(5) and (6) provide that the district court may, upon motion,
extend [or reopen] the time for filing a notice of appeal.  Rule
4(a)(5) is available to a party who shows excusable neglect or good

cause for failing to file within the 30 days provided; Rule 4(a)(6) may be applied where the court finds that the moving party did not receive notice of the entry of a judgment or order 'from the [district court] or any party within 21 days of its entry'and that no other party would be prejudiced by allowing the filing of a late notice of appeal. Relief under 4(a)(6) is available only 'upon motion filed within 180 days of entry of the judgment or order or within 7 days of receipt of such notice, whichever is earlier.'

"This case raises the question whether the seven-day filing window of Rule 4(a)(6) is opened when a party receives [fax] notice of the entry of a judgment or order from [the district court]."[1] For the reasons hereafter set forth, we answer that question in the affirmative and dismiss this appeal.

## I.

### FACTS AND PROCEEDINGS

Petitioner-Appellant James Joseph Wilkens, Jr. is currently on death row in Texas awaiting execution after being convicted and sentenced to death by a state court jury in Texas. Presumably having exhausted his direct and collateral appeals under state law, Wilkens sought habeas relief in federal district court. On June 18, 1999, the district court entered judgment denying Wilkens's petition. Although an entry in the district court's docket sheet for this case reflects that the clerk mailed copies of the Final

---

[1] <u>Benavides v. Bureau of Prisons</u>, 79 F.3d 1211, 1213 (D.C. Cir. 1996).

2

Judgment and Denial of Motions (the "judgment") to the attorneys of record that same day,[2] counsel for Wilkens avers that he never received a copy until, at the request of the staff attorney for the district court, a copy was "faxed" to him by the court on September 7, 1999.[3]

A subsequent docket entry, this one dated October 7, 1999, confirms that Wilkens filed a Motion for Leave to File Late Notice of Appeal on October 4, 1999.  Docket entries dated October 13, 1999 reflect three filings on October 12, 1999:  (1) The district court's order granting Wilkens's October 4 motion, (2) Wilkens's notice of appeal ("NOA"), and (3) Wilkens's motion to proceed in forma pauperis ("IFP") on appeal.  In November, the court granted Wilkens's motion to proceed IFP on appeal and issued a certificate of appealability ("COA").

## II.

## ANALYSIS

A threshold question implicit in every case that comes before us is whether we have appellate jurisdiction.  Respondent-Appellee

---

[2]  A June 18, 1999 docket entry in the district court record of this case states:  "Final Judgment that this petition for writ of habeas corpus is DENIED. All motions by either party not previously ruled on are hereby DENIED. (Signed by Judge Paul Brown) cc:  Attys. 6/18/99 (baf)."  Fed. R. Civ. P. 77(d) directs the clerk to "serve a notice of the entry [of judgment] by mail in the manner provided for in Rule 5," which specifies mailing to the party or his attorney at the attorney's last known address.  Rule 5 also provides that "[s]ervice by mail is complete upon mailing." (Emphasis added).

[3]  This docket entry indicates that the deputy clerk who made the docket entry, "(tm)" (initials of Toya McEwen), "[f]axed Memorandum Order and Final Judgment to M. Breding per request of staff atty."  Then as now, counsel of record for Wilkens was Mark W. Breding, Esq., Tyler, Texas.

3

Johnson has not questioned our jurisdiction; on the contrary, he has filed a "Non-Opposition to Petitioner's Out-of-Time Appeal" declining, "in the interest of justice," to oppose appellate review of the district court's judgment. Even absent a challenge by a litigant, however, we must examine the basis of our jurisdiction sua sponte[4]: A party cannot waive a defect in appellate jurisdiction;[5] neither can jurisdiction be created by mutual consent of the parties.[6] The timely filing of a valid NOA is a mandatory precondition to the exercise of appellate jurisdiction.[7] Consequently, we must determine whether Wilkens's NOA is somehow sufficient to satisfy this mandatory prerequisite to our hearing his case on appeal even though his NOA was not filed until almost four months after entry of judgment. Central to this inquiry is whether the district court's October 12, 1999 order granting Wilkens's October 4 motion for leave to file his NOA out of time is valid; if it is not, then neither is Wilkens's NOA or the district court's subsequently granted COA.

Notwithstanding the reason for a petitioner's being in custody — here, his conviction of a crime punishable by death — a

---

[4] United States v. Key, 205 F.3d 773, 774 (5th Cir. 2000); Mosley v. Cozby, 813 F.2d 659, 660 (5th Cir. 1987).

[5] Vincent v. Consol-Operating Co., 17 F.3d 782, 785 (5th Cir. 1994).

[6] Beers v. North American Van Lines, Inc., 836 F.2d 910, 912 (5th Cir. 1988).

[7] Dison v. Whitley, 20 F.3d 185, 186 (5th Cir. 1994).

4

petition for a writ of habeas corpus filed in federal court is a civil proceeding.[8]  Thus the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") govern habeas proceedings in the district court, and the civil provisions of the Federal Rules of Appellate Procedure ("Fed. R. App. P.") govern habeas proceedings on appeal.

The judgment of the district court in this case was entered on June 18, 1999; Wilkens's NOA was not filed until October 12, 1999, considerably more than the specified maximum of 30 days after entry of judgment.[9]  We are without jurisdiction to hear Wilkens's appeal, then, unless his late-filed NOA is somehow rescued by proceedings that comply with Rule 4(a)'s provisions for _extending_[10] or _reopening_ [11] the time within which to file an NOA.  A non-federal party to civil litigation in federal district court who fails to file an NOA within Rule 4(a)(1)'s 30-day period following entry of the order or judgment from which an appeal is sought still has available two lifelines for rescuing his appeal through a late-filed notice of appeal.  One is the _extension_ lifeline specified in Rule 4(a)(5) ("section (5)"), and the other is the _reopening_ lifeline specified in Rule 4(a)(6) ("section (6)").

---

[8]  _Fisher v. Baker_, 203 U.S. 174, 181 (1906).

[9]  Fed. R. App. P. 4(a)(1)(A).

[10]  Fed. R. App. P. 4(a)(5).

[11]  Fed. R. App. P. 4(a)(6).

5

Section (5) makes clear that the only time the district court is empowered to toss the extension lifeline to a putative appellant is when a motion seeking extension is filed no later than 30 days after expiration of the original 30 days specified in Rule 4(a)(1)(A), i.e., no later than 60 days after entry of the order or judgment from which appeal is sought. Only then can the district court even consider whether either of section (5)'s two exclusive grounds for granting such an extension — excusable neglect or good cause — has been demonstrated. As Wilkens did not file a motion for extension of time to file his NOA within 60 days following the June 18, 1999 entry of judgment, section (5)'s lifeline for _extending_ the time for filing an NOA had ceased to be available to Wilkens or to the district court long before October, 1999.

That said, only section (6)'s _reopening_ lifeline remains as a possibility for rescuing Wilkens's late-filed NOA.[12] Section (6) is the exclusive authority for the district court to order the reopening of an otherwise expired and no longer extendable time for

[12] **Rule 4.   APPEAL AS OF RIGHT ——**
**(a) Appeal in a Civil Case**
**. . . .**
**(6) Reopening the Time to File an Appeal.** The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:
**(A)** the motion if filed within 180 days after the judgment or order is entered or within 7 days after the moving party receives notice of the entry, whichever is earlier;
**(B)** the court finds that the moving party was entitled to notice of the entry of the judgment or order sought to be appealed but did not receive the notice from the district court or any party within 21 days after entry; and
**(C)** the court finds that no party would be prejudiced.

filing an NOA. A district court has authority to toss the reopening lifeline to a putative appellant only after a motion to reopen is filed by a party who is eligible to do so under the provisions of section (6); the district court cannot reopen <u>sua sponte</u>.[13] And, a party's eligibility to file a motion to reopen is governed exclusively by the three subparts of section (6), i.e., Rule 4(a)(6)(<u>A</u>) ("subpart (A)"),(<u>B</u>) ("subpart (B)"), and (<u>C</u>) ("subpart (C)").

Subpart (B) is the gatekeeper provision of section (6). It specifies that only a party who (1) was entitled to notice of entry of judgment,[14] but (2) did not receive notice from either (a) the district court or (b) any party (3) within 21 days after entry of judgment, is eligible to file a motion to reopen. None contest that Wilkens was entitled to notice of entry of judgment under Rule 77(d) or that he did not actually <u>receive</u> notice from the court or any party within 21 days after entry, so he meets subpart (B)'s threshold requirements for eligibility to seek reopening. This leaves only subpart (A) for us to consider.

Under subpart (A), a party such as Wilkens who meets the criteria of subpart (B) is eligible to file a section (6) motion to reopen and attempt to demonstrate the absence of prejudice as

---

[13] <u>Id.</u>

[14] Referring to Rule 4(a)(1)'s 30-day period for filing a notice of appeal and the party's entitlement of mail service of notice of entry of judgment from the clerk of the district court pursuant to Fed. R. Civ. P. 77(d).

required by subpart (C).[15]  For the moving party to be eligible to obtain a valid reopening order from the district court, however, he must have filed his motion seeking to reopen by the <u>earlier</u> of (1) 180 days after entry of judgment or (2) seven days after he "receive[d] notice of entry" of judgment.  Absent the timely filing of such a motion, the court is powerless to reopen the time for filing an NOA.  It is not disputed that Wilkens's October 4, 1999 motion for permission to file an NOA out of time was filed (1) well <u>before</u> the expiration of the 180-day period after the entry of judgment on June 18, 1999, but (2) well <u>after</u> the expiration of the seven-day period following his counsel's actual receipt of the facsimile copy of the judgment on September 7, 1999.

In light of these undisputed facts, our final question — one of law, not fact — is whether the copy of the court's judgment that was faxed by the district clerk's office on September 7, 1999 and received in hand by counsel for Wilkens that same day, qualified as "notice of the entry [of the judgment]" for the purpose of opening subsection (A)'s alternative seven-day motion filing window.  If the faxed copy did not qualify, then (1) the

---

[15]  Absence of prejudice is the only substantive requirement for the district court to have authority to grant a <u>reopening</u> order.  Such an order differs from an <u>extension</u> order under section (5), which requires the movant to demonstrate either good cause or excusable neglect — standards clearly more onerous than absence of prejudice and just as clearly inapplicable to section (6).  We assume that Wilkens met subpart (C)'s prejudice test.  This assumption is strengthened by, <u>inter alia</u>, the district court's grant of Wilkens's motion and the Respondent's filing of a Notice to Court of Non-Opposition to Petitioner's Out of Time Appeal on March 6, 2000, in response to our show cause order of January 27, 2000.

180-day period applied, (2) the reopening lifeline remained available, and (3) Wilkens's October 4, 1999 motion, the court's October 12 order granting that motion, and Wilkens's October 12 NOA, were all timely filed; and we would have jurisdiction to hear this appeal. If, however, the fax copy of the judgment did qualify as notice for purposes of subpart (A), then (1) the seven-day provision applied, (2) it trumped the 180-day provision by being the earlier of those two alternatives, and (3) Wilkens's motion, the court's order, and Wilkens's NOA are absolute nullities and we would have no jurisdiction to consider this appeal. It's as simple as that.

Unlike Rule 4(a)(1) and subpart (B) of section (6), nothing in subpart (A) of section (6) purports to ascribe any particular qualities or formalities to the words "receive" or "notice": There's nothing about the physical attributes of the notice (oral or written; electrostatic, carbon, or certified copy, etc.); nothing about who must furnish the notice (the court, the clerk, the party opposite, an interested or disinterested third party, etc.); nothing whatsoever about delivery of the notice, much less specification of a particular method of delivery (service of process, ordinary mail, registered mail, certified mail, e-mail, hand delivery, facsimile delivery, etc.); and nothing about who other than the moving party is authorized to receive the notice (counsel for moving party, responsible party in home or office,

etc.).  When we read the plain language of subpart (A), we can reach no conclusion but that the fax copy of the judgment —— sent by the clerk of the district court and received in hand by counsel of record for Wilkens, more than 21 days but less than 180 days after entry of judgment —— was sufficient to open subpart (A)'s seven-day window of opportunity within which Wilkens could have and must have filed a motion to reopen or forever be precluded from seeking to reopen.

In sum, irrespective of whether the plain words of subpart (A) are read in a vacuum or in pari materia with the plain words of Rule 4(a) in its entirety, the message of subpart (A) is pellucid: Any written [16] notice of entry received by the potential appellant or his counsel (or conceivably by some other person), regardless of how or by whom sent, is sufficient to open subpart (A)'s seven-day window.[17]  This conclusion is also consistent with relevant jurisprudence from other circuits, which we now examine briefly.[18]

---

[16] See Bass v. U. S. Dep't of Agric., 211 F.3d 959, 963 (5th Cir. 2000) (holding that oral notice of the judgment is insufficient under Rule 4(a)(6)).

[17] The Second Circuit, in Ryan v. First Unum Life Ins. Co., 174 F.3d 302 (2nd Cir. 1999), has read into subpart (A) the additional requirement that, when a party is represented by counsel, notice must be received by counsel.  Although we perceive no such requirement, that issue is not before us, as the fax copy of the judgment at issue here was received in hand by counsel of record for Wilkens; so anything we might say on that subject would be dicta.  We therefore leave that point for another day.

[18] Id.  As the notice received by counsel for Wilkens was written (fax) and was furnished by the district court, this case is distinguishable from Benavides, 79 F.3d 1211 (D.C. Circuit 1996), in which the notice was neither written nor furnished by the court or a party —— both factors relied on by the D.C. Circuit in concluding that oral notice from a third party is insufficient for purposes of subpart (A).  With all due respect, we disagree with the portion

The Ninth Circuit in <u>Nunley v. City of Los Angeles</u> embraced the concept of actual notice for starting the seven-day period.[19] The <u>Nunley</u> court ruled that the seven-day period began to run when the potential appellant's attorney happened to spot the entry of the order adverse to his client while simply perusing the clerk's docket records. No formal service; no sending of notice whatsoever; no "hard copy" of the notice in hand; yet, in the Ninth Circuit's view, still the receipt of notice of entry sufficient to trigger the seven-day clock. The court so held because counsel "received" actual notice, and subpart (A) specifies nothing more formal than that. Similarly, in <u>Zimmer St. Louis, Inc. v. Zimmer Co.</u>, the Eighth Circuit indicated in <u>dicta</u> that the seven-day period was triggered when counsel received oral notice from the judge's clerk that the adverse order had been entered.[20] And the First Circuit in <u>Scott-Harris v. City of Fall River</u>,[21] despite concluding that <u>written</u> notice is required to trigger the seven-day

---

of the <u>Benavides</u> opinion that would require subpart (A)'s notice to come from the clerk (now, the court) or a party. Although the crediting of <u>oral</u> notice under subpart (A) is foreclosed in this Circuit by <u>Bass</u>, <u>supra</u> n. 16 — and is not presented to us today — we see the question of the identity of the furnishers of notice as inapposite to subpart (A). The <u>Benavides</u> court, at 1214, obviously — and, we believe, erroneously — lifted the phrase, "from the [court]," from subpart (B) and its 21-day requirement, engrafted that phrase onto subpart (A), and applied it to the seven-day provision, all without any statutory basis to do so. As we have demonstrated in detail, the statutory language of subpart (A) is not, in our opinion, susceptible of such construction, whether read alone or in context of 4(a) as a whole.

[19] 52 F.3d 792, 794 (9th Cir. 1995).

[20] 32 F.3d 357, 359 (8th Cir. 1994). <u>But cf. Bass</u>, <u>supra</u> n.16.

[21] 134 F.3d 427 (1st Cir. 1997), <u>cert.</u> <u>denied</u> 523 U.S. 1003 (1998).

11

time period under subpart (A),[22] recently held that counsel's receipt of a written "demand for satisfaction of judgment" — distinct from notice of entry or the judgment itself— was sufficient to open subpart (A)'s seven-day filing window.[23]

More directly on point is a case from the Second Circuit which supports our conclusion today that actual receipt in hand by Wilkens's counsel of a facsimile copy of the judgment sent to him by the district court on September 7, 1999 and received by him that day, was sufficient to trigger the running of the seven-day period here at issue. In <u>Ryan v. First Unum Life Ins. Co.</u>,[24] the Second Circuit squarely addressed the issue whether a notice that was not formally <u>served</u> pursuant to Fed. R. Civ. P. 77(d) and 5(b) was sufficient to start the seven-day clock under subpart (A). In that case, counsel obtained a copy of the judgment from the clerk's office on the day after an investigator affiliated with counsel's law office had ventured to the clerk's office, been informed orally that judgment had been entered, and so advised counsel, who then obtained a copy from the clerk's office. The section (6) reopening motion in <u>Ryan</u> was filed within 180 days after entry of judgment but not within seven days after counsel had obtained in-hand a copy of the judgment. Rejecting the contention that subpart (A)

---

[22] <u>Id.</u> at 434.

[23] <u>Id.</u> at 435.

[24] 174 F.3d 302 (2d Cir. 1999).

12

requires formal Fed. R. Civ. P. 77(d) and 5(b) mail service of a copy of the judgment, the Ryan court held that when "a party's attorney receives from the Clerk in-hand, written notice indicating that judgment was entered, a motion to re-open must be filed within the subsequent seven days."[25]   In so holding, the Ryan court rejected counsel's argument that receipt from the clerk in-hand rather than by mail pursuant to Rule 77(d) was not "proper notice," precisely the argument advanced by counsel for Wilkens which, like the Second Circuit, we reject today.

Given the plain wording of Rule 4(a), our reasoning in Bass,[26] and the reasoning of those other circuits that have addressed the issue, we are unable to discern a distinguishing difference between counsels' receipt of copies of the judgments following their requests in Bass and Ryan, on the one hand, and the receipt of the written facsimile copy of the judgment by Wilkens's counsel, on the other hand.   All circuits that have addressed this aspect of the rule have concluded that receipt of written notice by counsel for the potential appellant starts the seven-day clock of subpart (A) on the day of receipt, even though not served by mail from the district court in strict compliance with Fed. R. Civ. P. 77(d) and 5(b).   Any contention that such notice must emanate from the court or a party, or that it must be served by mail pursuant to Rule

---

[25]   Id. at 305.

[26]   211 F.3d 959 (5th Cir. 2000).

13

5(b), runs counter to the plain wording of Rule 4(a) and section (6) in general, and counter to the plain wording of subpart (A) and the teachings of our opinion in <u>Bass</u>[27] and the cases from other circuits in particular. Counsel's argument that his receipt of notice by fax from the clerk of the district court was not "proper notice" or "formal notice," implying that subpart (A) specifies some sort of formal requirements, widely misses the mark. It has no foundation in the words of the applicable rules or case law.

Finally, counsel for Wilkens suggests, in the alternative, that "pursuant to [Fed. R. App. P.] 2, [this court] should suspend the requirements of Rule 4(a)(5) or (6)...so that justice may be done."[28] But even if we were inclined to do so because, <u>inter</u> <u>alia</u>, Wilkens is in custody awaiting execution, we could not take the action that is suggested by counsel. Although, as a general proposition, Rule 2 authorizes us to suspend the Federal Rules of

---

[27]  <u>Id.</u>

[28]  Counsel for Wilkens purports not to know whether the district court proceeded under subsection (5) or subsection (6) of Rule 4(a) but, despite the fact that neither his motion nor the court's order identifies the source rule, we must assume that the court was <u>reopening</u> the time to file. As we have shown, <u>extending</u> the time to appeal under subsection (5) had long since ceased to be a viable option by the time, on October 4, 1999, Wilkens filed his motion for leave to file his NOA out of time, as well as by the time, on October 12, 1999, the court granted the motion and Wilkens filed his NOA. Not only does Rule 4(a)(5) say nothing about a party's receipt of notice of entry of judgment, subpart (5)(C) specifies in mandatory terms that no extension may exceed 30 days after the prescribed 30-day time for appeal, i.e., 60 days after entry of judgment, or 10 days after the date on which the order granting the motion for extension is entered, whichever is later. As it is undisputed that no motion was filed within the 30+30 period of 60 days, there could have been no order granting a motion to <u>extend</u> the time for filing a notice of appeal, only one <u>reopening</u> the time. So, despite the absence of an identifying label in either the motion or the order, counsel for Wilkens has to know that the court's order was a "reopening" under Rule 4(a)(6) if it were anything at all.

14

Appellate Procedure for "good cause" in a particular case, Rule 2 is not an unconditional, roving warrant for us quixotically to "do justice." We cannot ignore the express caveat of Rule 2's final phrase, "except as otherwise provided in [Fed. R. App. P.] 26(b)." And, even though Rule 26(b) authorizes us to "extend the time prescribed by these Rules" or to "permit an act to be done after the prescribed time has expired," this same rule expressly forbids us to do so when the prescribed or expired time in question is the time for filing an NOA![29] Indeed, Rule 26(b) states unequivocally that we "may not extend the time to file:

> (1) a notice of appeal (except as authorized
>
> in Rule 4)...."

Today's entire self-examination of our appellate jurisdiction turns on the extension and reopening provisions of Rule 4(a). And, together, Rules 2 and 26(b) bring us right back to Rule 4(a), precisely where we were when we detoured to consider Wilkens's alternative invitation to do justice by (mis)applying Rule 2. On this alternative entreaty, our hands are tied.

III.

Conclusion

---

[29] See Fed. R. App. P. 2, Advisory Committee Notes, 1967 Adoption ("This rule contains a general authorization to the courts to relieve litigants of the consequences of default where manifest injustice would otherwise result. Rule 26(b) prohibits a court of appeals from extending the time for taking appeal or seeking review.")(emphasis added).

To recap, the district court's judgment denying habeas relief in this case was entered on June 18, 1999. The clerk of the district court appears to have served notice of the entry of judgment that day by mail to counsel for each party, in compliance with Fed. R. Civ. P. 77(d) and 5(b).[30] That neither Wilkens nor his counsel ever received this notice, however, is not contested.

Also uncontested is the fact that the first notice of entry of judgment ever received by counsel for Wilkens was oral, via telephone, from staff counsel for the district court on September 7, 1999; neither is it contested that the oral notice was followed immediately by the court's faxing of a copy of the judgment, or that the fax was received by counsel for Wilkens at his law office later that day. Counsel never received notice of entry of judgment within 60 days after entry, so that extension under Rule 4(a)(5) was unavailable to Wilkens.

Additional undisputed facts demonstrate that, even though Wilkens was entitled to service of the notice of entry of judgment, and even though notice appears to have been served, neither Wilkens nor his attorney received notice of entry of judgment from the court or any party within 21 days after entry. Wilkens thus cleared the first hurdle to entitlement to reopening under Rule 4(a)(6): Subpart (B)'s 21 days provision was not an impediment to

---

[30] See Fed. R. Civ. P. 5(b)("Service by mail is complete upon mailing").

16

his filing a motion for reopening, and he did in fact file such a motion within the 180-day outer limit for doing so.

Not until almost a month after receiving the fax copy of the judgment from the court on September 7, 1999, however, did Wilkens's lawyer file a motion in the district court for leave to file a late NOA, which we construe as a Rule 4(a)(6) motion to reopen. About one week after that, the district court granted Wilkens's motion and counsel filed Wilkens's late NOA. This all took place well <u>before</u> the expiration of subpart (A)'s 180-day period following entry of judgment, but well <u>after</u> the expiration of subpart (A)'s seven day period following receipt of notice of entry, the earlier of the times within which Wilkens had to file his motion to reopen.

Subpart (A) of Rule 4(a)(6) speaks only of receipt of notice: It says nothing at all about who must send the notice; nothing at all about how the notice must be sent, delivered, or received; nothing at all about the physical qualities of the notice — just plain, unadulterated "receives notice of the entry." Here, a written copy of the judgment was (1) sent by the court (2) via fax (3) to counsel's law office where it was printed out by his office fax machine and from there received in hand by counsel of record. Yet Wilkens's counsel filed no motion to reopen the time for filing an NOA, or any other pleading for that matter, during the ensuing period of seven days allowed by subpart (A). Thus the motion he

17

finally did file, several weeks after receiving the written notice via fax —— and the order that the district court signed and entered another eight days after that, purporting to grant that motion —— were without any legal effect whatsoever.

Moreover, even if, in the alternative, we were inclined to rescue Wilkens's otherwise void NOA by invoking Rule 2 "to prevent manifest injustice," we could not. As recognized by the Advisory Committee Notes, Rule 26(b) expressly proscribes using Rule 2 to extend the time for filing an NOA.[31]

Because Wilkens's motion of October 4, 1999 is an absolute nullity, the court's order of October 12 purporting to reopen the time for filing is an absolute nullity, in turn making Wilkens's October 12 NOA an absolute nullity. As Wilkens never timely filed a notice of appeal, we have no jurisdiction to hear his complaint that the district court erred in denying habeas relief.

APPEAL DISMISSED.

<span style="color:red">ENDRECORD</span>

---

[31]  See supra n. 26.

DENNIS, Circuit Judge, dissenting:

The issue in this case is whether the facsimile ("fax") transmission of a copy of the court's judgment to the fax number of Wilkens's counsel by the clerk's office at the behest of a staff attorney constitutes receipt of notice of the entry of judgment by Wilkens as required by Federal Rule of Appellate Procedure 4(a)(6)(A). Because I believe that receipt by fax transmission fails to suffice as receipt of "notice of the entry" of judgment under Rule 4(a)(6)(A), I respectfully dissent.

Since Rule 4(a)(6)(A) requires that an appellant file a motion to reopen the time to file an appeal within 180 days after the judgment or "within 7 days after the moving party receives notice of the entry," we must look to Federal Rule of Civil Procedure 77(d) as it provides the rule that directs the clerk to serve the notice. Rule 77(d) states:

> Immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon each party who is not in default for failure to appear, and shall make a note in the docket of the mailing. Any party may in addition serve a notice of such entry in the manner provided in Rule 5 for the service of papers. Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for

19

> failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Federal Rules of Appellate Procedure.

Fed. R. Civ. P. 77(d). Rule 5(b) provides, "Service upon the attorney or upon a party shall be made by delivering a copy to the attorney or party or by mailing it to the attorney or party at the attorney's or party's last known address or, if no address is known, by leaving it with the clerk of the court." Fed. R. Civ. P. 5(b)(in pertinent part).

The Advisory Committee Notes to these two rules compel the conclusion that Rule 4(a)(6) contemplates receipt of notice only as authorized by Rules 77(d) and 5(b). Rule 4(a)(6)(A) "provides a limited opportunity for relief in circumstances where the notice of entry of a judgment or order, required to be mailed by the clerk of the district court pursuant to Rule 77(d) of the Federal Rules of Civil Procedure, is either not received by a party or is received so late as to impair the opportunity to file a timely notice of appeal." Fed. R. App. P. 4 advisory committee notes (1991 Amendment). "This provision . . . enables any winning party to shorten the 180-day period by sending (and establishing proof of receipt of) its own notice of entry of a judgment, *as authorized by Fed.R.Civ.P. 77(d)*." Fed. R. App. P. 4(a)(6) advisory committee notes (1991 Amendment) (emphasis added). In 1991, Rule 77 was also amended as "a companion to the concurrent amendment to Rule 4 of

20

the Federal Rules of Appellate Procedure." Fed. R. Civ. P. 77 advisory committee notes (1991 Amendment). The amendment maintained the provision that the clerk shall serve notice of the entry of the judgment, but also invited the prevailing party to serve notice in order to ensure "certainty that the time for appeal is running." Id. Most important, the Advisory Committee Notes state, "An appropriate procedure for such notice is provided in Rule 5." Id.

Moreover, in Bass v. United States Dep't of Agric., 211 F.3d 959 (5th Cir. 2000), this court necessarily relied on an *in pari materia* reading of Rule 4(a)(6) and Rule 77(d).[32] To quote,

First, Appellate Rule 4(a)(6) and Civil Rule 77(d) must be read in pari materia. Rule 77(d) requires the clerk to serve the notice of entry of an order or judgment 'by mail.' Because a mailed notice is necessarily a written notice, it is logical to conclude that when reference is made later in Rule 77(d) to 'lack of notice of the entry,' not relieving a party 'from failure to appeal within the time allowed except as permitted in Rule

---

[32]Other courts have also read Appellate Rule 4(a)(6) and Civil Procedure Rule 77(d) together. See, e.g., Nunley v. City of Los Angeles, 52 F.3d 792, 795 (9th Cir. 1995) ("[Rule 4(a)(6)] is to be read in conjunction with Fed.R.Civ.P. 77(d)."); Benevento v. United States, No. 96-7311, 2000 WL 890381, *1 (S.D.N.Y. July 5, 2000) (finding that receipt by a party's attorney of an order mailed by the clerk "necessarily constitutes such notice to the party" as contemplated by Rule 4(a)(6)).

4(a),' Fed. R. Civ. P. 77(d)(emphasis added), that reference contemplates lack of written notice.

Thus, we must look to Rules 77(d) and 5(b) in order to determine what constitutes receipt of notice under Rule 4(a)(6)(A). The only alternative method of service contemplated by Rule 77(d) is expressly limited to service of the notice by a party who may do so "in the manner provided in Rule 5 for the service of papers." Fed. R. Civ. P. 77(d). Rule 5 requires service by mail or by one of the enumerated methods of delivery. Thus, the two rules *in pari materia* provide that either the clerk must serve notice of the entry of judgment by mail, or a party must serve such notice either by mail or by delivery as prescribed by Rule 5(b). See 16A WRIGHT, MILLER, & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3D § 3950.6 (3d ed. 1999) ("A winning party who desires certainty that the appeal time is running and who cannot know whether the other side has received notice from the clerk can themselves serve notice of the entry.").

In the instant matter, Wilkens's attorney was not served notice of the entry of judgment in any manner authorized by either Rule 77(d) or Rule 5(b). Because the clerk attempted service by fax rather than by mail and the opposing attorney did not even try to serve notice, I believe that valid service of notice of entry of judgment was not made.

Under Rule 5, a party may serve notice of entry of judgment only by mail or by delivery. Delivery means: "handing it to the attorney or to the party; or leaving it at the attorney's or party's office with a clerk or other person in charge thereof; or, if there is no one in charge, leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at the person's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." Fed. R. Civ. P. 5(b). Electronic transmission of a fax of the notice to an attorney's fax number does not constitute "delivery" under that definition. The fax obviously was not "hand[ed] . . . to the attorney," nor was it left "at the attorney's or party's office with a clerk or other party in charge" because there was no hand delivery. Also, delivery was not accomplished by the third method, "leaving it in a conspicuous place."

What is most telling about Rule 5(b) is not what it says, but what it does not: nowhere in Rule 5(b) is there mention of fax or any other electronic transmissions. However, in section (e), Rule 5 was specifically amended to include filing by fax. Fed. R. Civ. P. 5(e) ("A court may by local rule permit papers to be filed, signed, or verified by electronic means that are consistent with technical standards, if any, that the Judicial Conference of the United States establishes."). The Advisory Committee Notes for the

1991 amendment state: "The revision also accommodates the development of the use of facsimile transmission for filing." The Notes for the 1996 amendment likewise authorize filing by fax or other electronic means. The Committee expressed concern about developing standards: "Judicial Conference adoption of technical standards should prove superior to specification in these rules," and "standards must be established to assure proper maintenance and integrity of the record and to provide appropriate access and retrieval mechanisms." Notably, section (b), however, has never been amended to include electronic transmissions.

The well-reasoned opinion of <u>Salley v. Board of Governors, Univ. of North Carolina, Chapel Hill</u>, 136 F.R.D. 417, 420 (M.D. N.C. 1991), succinctly rejected the plaintiff's arguments that a fax constituted personal delivery under Rule 5(b) or else, delivery by "leaving it in a conspicuous place." Recognizing that including fax as a method of delivery specified in Rule 5(b) is better left to "the collegial process of a rules committee," the court then set out an excellent explanation of why faxes should not qualify as a method of delivery under Rule 5(b).

> When a document is personally delivered, a person can verify and certify that an intact and complete copy was left in the attorney's office. With a fax transmission, the person sending the document can only certify that he or she attempted to, and apparently did, transmit the

document electronically over telephone lines to the other office. That person cannot certify that the copy was in fact received in that office. Also, since fax machines can operate 24 hours a day and during holidays when the lawyer's office is closed, this presents a problem of determining the time of service . . . . Therefore, should faxed documents be deemed served from the time of transmission? Or, if they are transmitted outside of regular office hours, should service only be deemed to have occurred when the office is next opened? For these reasons and unresolved questions, the Court finds that fax transmission are not a form of delivery as that term is used in Rule 5(b).

136 F.R.D. at 420.

The Salley decision is in accord with numerous other cases holding that fax is an insufficient form of delivery under Rule 5(b). See Magnuson v. Video Yesteryear, 85 F.3d 1424, 1429 (9th Cir. 1996) ("Service by fax does not satisfy Fed. R. Civ. P. 5(b)). See also United States v. Galiczynski, 44 F.Supp. 2d 707, 713 (E.D. Pa. 1999) ("The result reached here, that the Federal Rules of Civil Procedure do not authorize service by fax, is consistent with the unanimous decisions rendered by courts that have considered the issue." (citing, *inter alia*, Switzer v. Sullivan, No. 95-3793, 1996 WL 52911, *1 (N.D. Ill. Feb. 5, 1996); Mushroom Assocs. v. Montery

<u>Mushrooms, Inc.</u>, No. 91-1092, 1992 WL 442898, *4 (N.D. Cal. Aug. 21, 1992))); <u>Erbacci, Cerone, & Moriarty, Ltd. v. United States</u>, 166 F.R.D. 298, 303 (S.D.N.Y. 1996) (attempting to serve motion to reconsider by facsimile violated Rule 5(b)).

Cases cited by the majority do not support the contention that Rule 4(a)(6) is not read in conjunction with Rule 77(d). <u>Nunley v. City of Los Angeles</u>, 52 F.3d at 794, did seem to embrace the concept of actual notice triggering the 7-day time period of Rule 4(a)(6), in dicta; however, the court's actual holding was simply that the presumption of receipt established by mailing is rebuttable and could be overcome by evidence of non-receipt at a contradictory hearing on remand. The First Circuit in <u>Scott-Harris v. City of Fall River</u>, 134 F.3d 427, 434-35 (1st Cir. 1997), *rev'd on other grounds*, 520 U.S. 1263 (1997), held that a demand letter written by opposing counsel sufficed to trigger Rule 4(a)(6); however, presumably this letter was mailed and qualified as service under Rule 5(b) as contemplated by Rule 77(d). Finally, in <u>Ryan v. First Unum Life Ins. Co.</u>, 174 F.3d 302, 305 (2nd Cir. 1999), the Second Circuit rejected Ryan's contention that "notice of the entry" in Rule 4(a)(6) contemplates only notice by mail. Although <u>Ryan</u>'s rationale is problematic, its result is consistent with a reading of Rules 4(a)(6), 5(b), and 77(d) that authorize service upon a party's attorney by delivery as well as by mail. Ryan's attorney received the copy of the judgment marked to indicate the

date of entry in-hand from the clerk of court rather than by mail. Id. at 305. The Second Circuit rejected Ryan's argument that such notice must have been mailed and must have been sent at the prompting of the clerk or the adverse party. Id. Thus, Ryan is readily distinguishable from the present case, as a personal delivery to a party's attorney is markedly different from a fax transmission to an attorney's fax phone number.

Additionally, although it is not relevant to my analysis of this case, I disagree with the majority's characterization of the facts of this case. The majority repeatedly emphasizes that Wilkens's counsel received "in-hand" the faxed copy of the judgment on the day of its transmission. However, as I read the record, there is no conclusive evidence of such same-day, in-hand receipt. Wilkens's counsel avers in his affidavit only that "Toya McEwen of the District Clerk's office sent me a fax containing the Court's Memorandum Order, and Final Judgment."

Accordingly, I conclude that (1) Wilkens did not receive notice of the entry of judgment as required by Federal Rules of Civil Procedure 77(d) and 5(b) so as to trigger Rule 4(a)(6)(A)'s 7-day period; (2) Wilkens's motion for leave to file late notice of appeal (construed as a motion to reopen the time to file an appeal) was timely under Rule 4(a)(6)(A)'s 180-day period; (3) Wilkens's notice of appeal was timely filed within the 14-day window under

Rule 4(a)(6); and, (4) we have appellate jurisdiction of this appeal.